**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**SOUTHERN DIVISION**
**at PIKEVILLE**

**CIVIL ACTION NO. 06-133-DLB**

**KEITH CAUDILL**                                                                                   **PLAINTIFF**


**vs.**                                          **MEMORANDUM OPINION & ORDER**


**JO ANNE BARNHART, Commissioner**
**SOCIAL SECURITY ADMINISTRATION**                                            **DEFENDANT**


\* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

### I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Keith Caudill filed applications for disability insurance benefits (DIB) on August 26, 2003, and Supplemental Security Income (SSI) payments on January 27, 2004 (dates of protective filings). (Tr. 71-74, 301-305). Plaintiff alleges he became unable to work on July 22, 2003. He alleges disability due to arthritis, back pain, disc disease, black lung disease, and a broken pelvis. (Tr. 84-103). His applications were denied initially and on reconsideration. (Tr. 53-56, 60-62, 307-309). At Plaintiff's request, an administrative hearing was conducted on July 19, 2005, by Administrative Law Judge (ALJ) Don C. Paris. (Tr. 326-75). On September 12, 2005, the ALJ ruled that Plaintiff was not disabled and

therefore not entitled to DIB or SSI payments. (Tr. 17-31).  This decision became the final

decision of the Commissioner when the Appeals Council denied review on May 12, 2006.

(Tr. 10-12).

On June 30, 2006, Plaintiff filed the instant action.  The matter has culminated in

cross motions for summary judgment, which are now ripe for adjudication (Doc. #13, 17).

## II.  DISCUSSION

### A.     Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether

it is supported by substantial evidence and was made pursuant to proper legal standards.

*See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994).

"Substantial evidence" is defined as "more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Id.*  Courts are not to conduct a *de novo* review, resolve

conflicts in the evidence, or make credibility determinations.  *See id.*  Rather, we are to

affirm the Commissioner's decision, provided it is supported by substantial evidence, even

if we might have decided the case differently.  *See Her v. Comm'r of Social Security,* 203

F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis.  Step 1 considers

whether the claimant is still performing substantial gainful activity; Step 2, whether any of

the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal

a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past

relevant work; and Step 5, whether significant numbers of other jobs exist in the national

economy which the claimant can perform.  As to the last step, the burden of proof shifts

from the claimant to the Commissioner.  *See Jones v. Comm'r of Social Security,* 336 F.3d

469, 474 (6th Cir. 2003); *Preslar v. Secretary of Health & Human Servs.,* 14 F.3d 1107,

1110 (6th Cir. 1994).

### B.    The ALJ's Determination

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity

since the alleged onset of his disability. (Tr. 21, 29).  At Step 2, the ALJ found Plaintiff's

chronic hip pain resulting from aseptic necrosis, adjustment disorder not otherwise

specified, borderline intellectual functioning, chronic obstructive pulmonary disease, and

coal worker's pneumoconiosis to be severe within the meaning of the regulations. (Tr. 22,

29).  At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of

impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation

No. 4. (Tr. 22, 29).

At Step 4, the ALJ found that Plaintiff retains the residual functional capacity (RFC)

to:

> perform a significant range of light exertional work; occasionally lift and carry
> 20 pounds and frequently 10 pounds; stand and walk a total of 6 hours with
> no prolonged standing or walking in excess of 1 hour without interruption; sit
> 6 hours; only occasionally push and pull or use of foot controls with his lower
> extremities; only occasional climbing of stairs and ramps; never climb ropes,
> ladders, and scaffold; limited to occasional non-repetitive bending, twisting,
> stooping, kneeling, or crouching; never crawl; avoid concentrated exposure
> to fumes, odors, dusts or gases and extreme heat, humidity and cold; avoid
> concentrated exposure to full body vibration; not drive or ride in a vibratory
> vehicle for a prolonged period of time. [Plaintiff] also suffers from a mild
> adjustment disorder not otherwise specified and is borderline intellectual
> functioning with alcohol abuse in early remission.  However, he has the
> mental capacity to understand and perform simple, repetitive work tasks. He
> is able to sustain the necessary attention and concentration to perform
> simple, repetitive work tasks to adequately relate and interact with others
> including co-workers and supervisors and he is able to adapt to routine

changes in his work environment and to tolerate the stress and pressure of
day to day employment.

(Tr. 25-26, 30).   Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was

unable to perform any of his past relevant work as a security guard, a sanitation/janitor, and

a video/tanning bed owner and operator. (Tr. 28, 30).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation.  At

Step 5, the ALJ found that there were a significant number of jobs available to Plaintiff in

the national and regional economies, despite his limitations. (Tr. 28-29).  This conclusion

resulted from testimony by a vocational expert (VE), in response to a hypothetical question

assuming an individual of Plaintiff's age (41 years of age at the time of decision and so a

"younger" individual), education (high school), past relevant work experience (no

transferable skills from any past relevant work), and RFC. (Tr. 28-30).  The VE testified that

Plaintiff could work as a cashier and a counter clerk or in a weighing, measuring, or

inspecting job. (Tr. 29-30).  Since these were positions of significant number in both the

regional and national economies, the ALJ concluded Plaintiff was not disabled under the

Social Security Act. (Tr. 29-30).

### C.      Analysis

Plaintiff raises four challenges in his appeal.   The Court will address these

challenges in turn.

First, Plaintiff claims that his breathing impairment meets Listings 3.02 and 3.06 for

COPD and pneumoconiosis.   In support of this claim, Plaintiff notes that he had a

pulmonary function test which demonstrated an FEV that satisfies the Listing level. (Tr.

286).  Plaintiff notes that he is 75 inches tall and has a FEV of 1.06, which is less than the

Listing level of 1.65 indicated in Listing 3.02(A) for someone of his height.  Plaintiff also states that he satisfies Listing 3.06 because he suffers from pneumoconiosis and has an FEV below 1.65.  The Commissioner responds to this challenge by arguing that Plaintiff failed to meet his burden of presenting specific medical findings to satisfy all of the criteria of the introductory requirements of the Listings.  The Court agrees.

The Commissioner is required to consider plaintiff's impairments in light of the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing).  The Listing sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work.  20 C.F.R. § 404.1525(a).  If plaintiff suffers from an impairment which meets or equals one set forth in the Listing, the Commissioner renders a finding of disability without consideration of plaintiff's age, education, and work experience. 20 C.F.R. § 404.1520(d).  An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment.  20 C.F.R. § 404.1525(d).  Unless all the requirements of the listing are present, the claimant does not satisfy that listing.  *Hale v. Secretary*, 816 F.2d 1078, 1083 (6th Cir. 1987).  "It is unacceptable to evaluate the degree of Plaintiff's pulmonary disability on the basis of unreliable test results."  *Spradlin v. Secretary of Health & Human Servs.*, 857 F. Supp. 1215, 1217 (S.D. Ohio 1993).

Plaintiff cites a single pulmonary function test as the basis for his claim.  Plaintiff does not offer evidence regarding whether other pulmonary function tests were conducted.  To evaluate a disability claim under 3.02(A), Listing 3.00(E) instructs that the FEV-1 value "should represent the largest of at least three satisfactory forced expiratory maneuvers."  Plaintiff does not include post-bronchodilator values; nor does he indicate spirometric

tracing.  Plaintiff does not address whether the study was performed in the presence of wheezing or other evidence of bronchospasm or, if these were present at the time of examination, that the studies were repeated after the administration of a bronchodilator. All of these factors must be accounted for and documented by Plaintiff according to Listing 3.00(E) Documentation of pulmonary function testing.

Based on this failure to comply with the requirements set forth for documenting pulmonary function testing found in Listing 3.00(E), substantial evidence supports the ALJ's finding that Plaintiff's condition did not meet or equal the Listings.

Second, Plaintiff claims the ALJ erred in rejecting the opinions of the treating physicians and by failing to comply with SSR 96-2p regarding the weight to be given to the opinion of treating physicians.

As a general matter, "the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim."  *Hall v. Bowen,* 837 F.2d 272, 276 (6th Cir.1988) (citations omitted). However, the opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings.  *Houston v. Secretary,* 736 F.2d 365, 367 (6th Cir.1984), and is not contradicted by substantial evidence to the contrary.  *Loy v. Secretary,* 901 F.2d 1306, 1308-09 (6th Cir. 1990).  The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985).  Thus, the Commissioner is not bound by the opinion of a treating physician when the opinion is contradicted by objective medical evidence.  *Cohen v. Secretary,* 964 F.2d 524, 528 (6th Cir.1992).

Moreover, the ALJ is permitted to disregard the treating doctor's opinion regarding a diagnosis where such diagnosis is unsupported by any clinical findings or medical evidence.  *Cutlip v. Secretary*, 25 F.3d 284, 287 (6th Cir. 1994).  Furthermore, the ALJ is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability.  20 C.F.R. § 404.1527(e)(1).  A physician's statement that plaintiff is disabled is not determinative of the ultimate issue.  *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984).  Instead, the ALJ may reject such determinations when good reasons are identified for not accepting them.  *See Hall,* 837 F.2d at 276.

In this case, the conclusions of Plaintiff's treating physicians were not supported by, and even contradicted, the substance of their reports.  There exists ample evidence to support the ALJ's rejection of the opinions of Plaintiff's treating physicians.  Denes Martonffy, M.D. treated Plaintiff for lower back pain. (Tr. 205-06).  Dr. Martonffy reported that Plaintiff was neurologically intact and that his musculoskeletal examination was essentially normal despite some tenderness of the lumbar spine.  Despite these observations, Plaintiff was released to work with a restriction to not lift more than 15 pounds and no stooping, bending, or twisting (Tr. 202-203).  The ALJ's decision to reject Dr. Martonffy's opinion based on this inconsistency is supported by the record.

Similarly, the Commissioner rejected the opinion of Van S. Breeding, M.D.  On November 19, 2003, Dr. Breeding treated Plaintiff for decreased range of motion of the back with a number of other ailments causing pain in Plaintiff's back region. (Tr. 226).  On December 18, 2003, Dr. Breeding stated that Plaintiff could do physical work-related activities with restrictions from lifting and carrying more than 20 pounds. (Tr. 222-225).  The ALJ determined that Dr. Breeding's limited residual capacity was not supported by his

7

treatment notes.   In support of this determination, the ALJ points to Dr. Breeding's treatment notes of March 3, 2005, which indicate that Plaintiff was able to perform activities of daily living in spite of lower back pain. (Tr. 277-79).   This apparent inconsistency between Dr. Breeding's rather conclusory opinion as to Plaintiff's ability to do work and the objective medical evidence provided in the record lends support to the ALJ's decision to reject Dr. Breeding's opinion.

The opinion of Robert S. Spangler, Ed.D, was also rejected by the Commissioner. As the ALJ highlighted, Dr. Spangler administered the Weshscler Adult Intelligence Scale-III. (Tr. 270-71).   Dr. Spangler diagnosed an adjustment disorder with mild anxious mood, nicotine dependence,  and borderline intelligence. (Tr. 274).   Moreover, Plaintiff's Global Assessment of Functioning Scale score indicated Plaintiff has moderate symptoms or moderate difficulty in social, occupational, or school functioning.   Additionally, Plaintiff informed Dr. Spangler that he goes to cook-outs, takes his son to baseball practice, attends church, watches television, takes out the garbage, washes dishes, and does yard work every two weeks. (Tr. 270).  Despite these findings and admissions, Dr. Spangler concluded that Plaintiff has a poor/none ability to understand, remember, and carry out complex job instructions and a fair ability to perform detailed, but not complex job instructions. (Tr. 275). Once again, the case record provides support for the ALJ's rejection of the treating physician's opinion based on inconsistencies between the opinions and treatment notes of the treating physician.

Based on the foregoing, the record indicates that the ALJ properly considered and evaluated the opinions of Plaintiff's treating physicians.  Contrary to Plaintiff's argument, the ALJ properly weighed the opinions of the treating physicians, highlighting inconsistencies

where appropriate and providing a reasoned analysis with regard to each.  Where the opinions of treating physicians are inconsistent with their treatment notes, the ALJ is well within his discretion to give greater weight to the non-treating agency physicians' opinions where those opinions are supported by objective medical evidence.  *See Houston*, 736 F. 2d at 367; *Loy*, 901 F.2d at 1308-09.

Third, Plaintiff claims the ALJ erred by discrediting Plaintiff's subjective allegations of pain.  Credibility determinations related to a claimant's subjective pain complaints rest with the ALJ.  *Siterlet v. Secretary of Health & Human Servs.,* 823 F.2d 918, 920 (6th Cir. 1987)(per curiam).  As the Plaintiff notes, pain alone, if the result of a medical impairment, may be severe enough to constitute disability.  *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981).  However, in order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition.  If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain.  *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986).  *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991).  This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King*, 742 F.2d at 975.  Where, however, the medical evidence conflicts, and there

is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41. Plaintiff argues that the ALJ failed to follow the two-step test to evaluate a claimant's allegations of disabling pain.

Plaintiff argues that the ALJ summarily rejected Plaintiff's testimony and subjective allegations of pain without first determining whether or not Caudill had an underlying condition that could produce the pain alleged. This characterization of the ALJ's Decision is inaccurate. In fact, the ALJ explicitly acknowledged Plaintiff's medical issues. However, rather than accept Plaintiff's claims of debilitating pain at face value, the ALJ determined that the record as a whole did not support a conclusion that Plaintiff suffered from debilitating pain. Based on the record, the ALJ determined that Plaintiff's allegations regarding pain lacked credibility. Credibility determinations related to a claimant's subjective pain complaints rest with the ALJ. *Siterlet v. Secretary of Health & Human Servs.,* 823 F.2d 918, 920 (6th Cir. 1987)(per curiam).

Finally, Plaintiff claims that the ALJ erred in failing to comply with SSR 00-4p by not resolving a conflict between the testimony of the vocational expert (VE) and the Dictionary of Occupational Titles (DOT). Specifically, Plaintiff states that, at the hearing, the VE testified that the DOT does not recognize a sit/stand option, which was part of the ALJ's hypothetical question that he asked the VE. Plaintiff further states that this lack of a sit/stand option was not discussed in ALJ's opinion. Plaintiff argues that a resolution to this conflict must be presented in the ALJ's opinion.

As the Commissioner notes, the Plaintiff has misinterpreted SSR 00-4p.  In pertinent part, SSR 00-4p reads:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

In this case, the ALJ did what he was required to do.  He asked the VE whether the DOT recognizes a sit/stand option. (Tr. 371).  In response, the VE stated that the DOT does not recognize the sit/stand option "at levels specificity that has been stated in the hypothetical." (Tr. 371-372).  The VE further testified that the DOT "does in general terms state that light work, for example, requires, or is defined as standing for two thirds of the day, sitting a third of the day.  That's the far, as far as the DOT goes.  So, it doesn't recognize as such the sit/stand option." (Tr. 371-372).  Through this questioning of the VE, the ALJ "elicit[ed] a reasonable explanation for the conflict before relying on the VE evidence," as is required by SSR 00-4p.  Nothing more is required of the ALJ, as there was no apparent unresolved conflict.

*Gibbons v. Barnhart*, 85 Fed. Appx. 88 (10th Cir. 2003), similarly involved testimony from a VE indicating he was relying on the DOT. The court found that once the VE was asked and confirmed this reliance, SSR 00-4p imposed no other obligation on the ALJ, as there was no evident conflict.  *Gibbons* also cited to a Fifth Circuit opinion which concluded that it would be unfair to allow a claimant to comb a voluminous record and DOT after-the-fact and find a conflict on appeal rather than develop it during the administrative hearing

process. The Fifth Circuit found that the more appropriate focus was on "whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs" for which the ALJ was permitted to rely upon credible VE testimony. *Gibbons*, 85 Fed. Appx. at 93 (quoting *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000)).

Thus, the proper inquiry is whether there is enough evidence for the ALJ to find the VE credible and so rely upon that testimony. *See Barker v. Shalala*, 40 F.3d 789, 795 (6th Cir. 1994). Since no conflict between the VE's testimony herein and DOT was apparent to the ALJ because the VE testified that they were consistent, the ALJ had a right to rely on the VE opinions even if an inconsistency, in fact, existed. Furthermore, an opportunity to probe the credibility of the VE was provided at the hearing, and the credibility determination "was properly within the province of the ALJ to determine." *Barker*, 40 F.3d at 795 (citing *Sias v. Secretary of Health & Human Servs.*, 861 F.2d 475, 480 (6th Cir. 1988)). The ALJ's credibility findings are subject to substantial deference on review, *King*, 742 F.2d at 974, and this Court has no reason to believe that ALJ erred by accepting what the expert said.

This approach is consistent with Sixth Circuit case law. The Sixth Circuit has consistently held that an ALJ may properly rely on the testimony of a vocational expert even if it is inconsistent with the job descriptions set forth in DOT. *Barker*, 40 F.3d at 795 (determining that an ALJ can accept testimony of a VE that differs from the information contained in the DOT); *Basinger v. Sec'y of Health & Human Serv.*, 33 F.3d 54 (6th Cir. 1994) (finding that the VE and Secretary were not required to rely on the job classifications of the DOT); *Strong v. SSA*, 88 Fed. Appx. 841, 847 (6th Cir. 2004) (concluding that an ALJ may rely on VE testimony notwithstanding contrary conclusions in the DOT if: 1) the VE is

found to be credible and 2) the hypo posed to the VE accurately reflects the claimant's mental and physical limitations).

### III. CONCLUSION

Accordingly, for the reasons stated,

**IT IS ORDERED** that the decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. #13) is hereby **DENIED.**

**IT IS FURTHER ORDERED** that Commissioner's Motion for Summary Judgment (Doc. #17) is hereby **GRANTED.**

A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

Dated this 28th day of September, 2007.



Signed By:

David L. Bunning

United States District Judge

G:\DATA\SocialSecurity\MOOs\7-06-133-Caudill.MOO.wpd